**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| William Russell Roberts, | No. CV-21-08255-PCT-DJH |
| Plaintiff, | **ORDER** |
| v. | |
| Lee Anne Gallagher, Volkswagen Group of America Incorporated, and Northern Arizona Healthcare Corporation, | |
| Defendants. | |

  Defendant Lee Anne Gallagher ("Ms. Gallagher"), Defendant Volkswagen Group of America Incorporated ("VW"), and Defendant Northern Arizona Healthcare Corporation ("NAHC") have each filed separate Motions for Summary Judgment on *pro se* Plaintiff William Russell Roberts' ("Plaintiff") negligence, products liability, and "professional negligence" claims. (Docs. 175; 176; 190). Each Motion is fully briefed.[1]

## I. Background[2]

  This case arises from a car accident where Plaintiff was struck head on by Ms. Gallagher while traveling on State Route 64 ("SR-64") in Coconino County, Arizona. (Doc. 1 at 6). At the time of the accident, Plaintiff was driving a Volkswagen Jetta his brother rented from non-party Enterprise Rental Company. (*Id.*) After the accident, local

---

[1] (Docs. 186 (Plaintiff's Response to Ms. Gallagher); 187 (Plaintiff's Response to VW); 195 (Plaintiff's Response to NAHC); 188 (Ms. Gallagher's Reply); 189 (VW's Reply); 196 (NAHC's Reply)).

[2] The facts stated in this section are undisputed, unless otherwise noted.

law enforcement responded to the scene and prepared a Vehicle Incident Report ("VIR"). The VIR states that "Vehicle 'X' failed to yield" when leaving a Texico gas station off of SR-64 and that Ms. Gallagher swerved into the oncoming lane of traffic to avoid Vehicle "X." (Doc. 175-1 at 7).  When she swerved, Ms. Gallagher collided with Plaintiff head on. (*Id*.)

Following the accident, Plaintiff, Ms. Gallagher, and their passengers were all transported to Flagstaff Medical Center, operated by NAHC.  (Doc. 1-1 at 7).  They were all treated and released with minor injuries.  (*Id*.)  Eleven months after the accident, Plaintiff suffered a cardiac arrest which required him to have open heart surgery.  (Doc. 1 at 6).  Plaintiff states his cardiac arrest was due to his left anterior descending artery being 100% blocked.  (*Id*.)  Plaintiff alleges the airbag that went off during the accident contributed to his cardiac arrest, and that NAHC should have caught that his blood pressure was elevated during his treatment in Flagstaff.  (*Id*. at 7).  Plaintiff's medical records show that NAHC treated him for acute chest pain, a pulmonary contusion, and hypertension and that he was told upon discharge to return to the emergency department immediately with new or worsening symptoms.  (Doc. 190 at 3; Doc. 190-4 at 1, 3, 5).  Plaintiff's treatments records also show that he demanded to be discharged while in the ICU so that he could have a cigarette, left against medical advice, and that he later returned because smoking caused pain and tightness in his ribs and chest.  (Doc. 190-4 at 1).  Plaintiff was given a chest x-ray, CT scan, and his blood pressure was checked at the time he was treated. (*Id*. at 3–5).  Based on these tests, the emergency room doctors found that Plaintiff did not have any acute abnormalities and that his blood pressure had improved during his stay. (*Id*. at 4).  When Plaintiff was discharged, he was given instructions to follow up with his primary care provider and given return precautions.  (*Id*. at 5).

Plaintiff filed a negligence claim against Ms. Gallagher for allegedly causing the accident, claims of products liability and negligence against VW for allegedly causing his cardiac arrest, and a claim against NAHC for "professional negligence"[3] as a result of the

---

[3] The Court will construe this claim as a claim for medical malpractice.

alleged inadequate care he received from NAHC.  (Doc. 1 at 7).  Each Defendant now separately seeks summary judgment on Plaintiff's respective claims against them.  (Docs. 175; 176; 190).

## II.    Legal Standard

A court will grant summary judgment if the movant shows there is no genuine dispute of material fact and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).  A fact is "material" if it might affect the outcome of a suit, as determined by the governing substantive law. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986).  A factual dispute is "genuine" when a reasonable jury could return a verdict for the nonmoving party.  *Id*.  In judging evidence at the summary judgment stage, the court does not make credibility determinations or weigh conflicting evidence.  Rather, it draws all inferences in the light most favorable to the nonmoving party.  *See T.W. Electric Service, Inc. v. Pacific Electric Contractors Ass'n*, 809 F.2d 626, 630-31 (9th Cir. 1987).

A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims."  *Celotex*, 477 U.S. at 323-24.  Summary judgment is appropriate against a party who "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id*. at 322.  The moving party bears the initial burden of identifying portions of the record, including pleadings, depositions, answers to interrogatories, admissions, and affidavits, that show there is no genuine factual dispute.  *Celotex*, 477 U.S. at 323.  Once shown, the burden shifts to the non-moving party, which must sufficiently establish the existence of a genuine dispute as to any material fact.  *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585–86 (1986).  Where the moving party will have the burden of proof on an issue at trial, the movant must "affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party."  *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007).  On an issue as to which the nonmoving party will have the burden of proof, however, the movant can prevail "merely by pointing

out that there is an absence of evidence to support the nonmoving party's case." *Id.* (citing *Celotex Corp.*, 477 U.S. at 323).   If the moving party meets its initial burden, the nonmoving party must set forth, by affidavit or otherwise as provided in Rule 56, "specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 250; Fed. R. Civ. P. 56(c).

"The mere existence of a scintilla of evidence in support of the non-moving party's position is not sufficient[ ]" to defeat summary judgment. *Triton Energy Corp. v. Square D Co.*, 68 F.3d 1216, 122 (9th Cir. 1995).   In addition, it is the nonmoving party's responsibility to "identify with reasonable particularity the evidence that precludes summary judgment." *Keenan v. Allan*, 91 F.3d 1275, 127 (9th Cir. 1996) (quoted source omitted).   The Court need not "scour the record in search of a genuine issue of triable fact." *Id.* (quoted source omitted); *see also* Fed. R. Civ. P. 56(c)(3) ("The court need consider only the cited materials, but it may consider other materials in the record.").

**III.   Discussion**

Ms. Gallagher moves for summary judgment on Plaintiff's negligence claim against her, arguing the undisputed evidence shows she was not negligent in turning into Plaintiff because her actions were in response to the sudden emergency caused by the vehicle that turned in front of her.  (Doc. 175 at 5).  Alternatively, Ms. Gallagher seeks partial summary judgment related to Plaintiff's alleged entitlement to compensatory damages related to his cardiac arrest, lost wage damages, property damages, and punitive damages.  (*Id.* at 3). VW seeks summary judgment on Plaintiff's products liability and negligence claims and argues that Plaintiff has not provided any evidence to establish the existence of a defect in the Jetta or that any alleged defect caused his injuries.  (Doc. 176 at 6, 10).  NAHC seeks summary judgment on Plaintiff's medical malpractice claim, arguing that Plaintiff cannot substantiate his claims without an expert under Arizona law and that Plaintiff never retained an expert or certified that one was not needed, as required by A.R.S. § 12-2603. (Doc. 190 at 1–2).  The Court will address each Motion in turn.

### A.     Ms. Gallagher's Motion for Summary Judgment (Doc. 175)

Ms. Gallagher argues that the Court should grant summary judgment on Plaintiff's claims for negligence as he has failed to produce any evidence that she was negligent and that the "sudden emergency doctrine" lowered Ms. Gallagher's duty to that "which an ordinarily prudent person would exercise in the same situation." (Doc. 175 at 5–6 (quoting *Sheehy v. Murphy*, 380 P.2d 152, 154 (Ariz. 1963)). Ms. Gallagher specifically argues that she drove reasonably under the circumstances given a car had swerved in front of her. (*Id*. at 6). Alternatively, Ms. Gallagher argues that the Court should grant her summary judgment on Plaintiff's claims related to his cardiac arrest, loss of future earnings, property damage, and punitive damages. (*Id*. at 1). Plaintiff argues that the Court should deny Ms. Gallagher's request for summary judgment as genuine disputes of material fact are present, including: his deposition testimony that "there was no Phantom 'x' Vehicle" and that Ms. Gallagher "never applied her brakes and she failed to drive her vehicle and was negligent when she let go of the steering wheel." (Doc. 186 at 2).

### 1.     The Sudden Emergency Doctrine and Negligence

The sudden emergency doctrine warrants a jury instruction when the actor has reacted to an emergency, even though that reactive conduct might be quite impulsive and negligent absent such an emergency. *See Petefish By & Through Clancy v. Dawe*, 672 P.2d 914, 917 (Ariz. 1983). "Consideration of a sudden emergency is, of course, not a separate doctrine but only a part of the determination of what is reasonable care under the circumstances." *Myhaver v. Knutson*, 942 P.2d 445, 447 (Ariz. 1997).

As the movant, Ms. Gallagher can prevail on summary judgment by arguing that there is "an absence of evidence to support the nonmoving party's case." *Soremekun*, 509 F.3d at 984 (citing *Celotex Corp*., 477 U.S. at 323). To establish a *prima facie* claim of negligence, a plaintiff must prove (1) the existence of a duty of the defendant to the plaintiff, (2) a breach of that duty, and (3) an injury proximately caused by the breach. *See Brookover v. Roberts Enterprises, Inc*., 156 P.3d 1157, 1160 (Ariz. Ct. App. 2007). Summary judgment on a negligence claim is appropriate if the complaining party fails to

establish one of the elements of negligence.  *See Creel v. Loy*, 524 F. Supp. 3d 1090, 1094 (D. Mont. 2021) (internal citations omitted).  Ms. Gallagher can also prevail on summary judgment where "no reasonable juror could conclude that the standard of care was breached or that the damages were proximately caused by the defendant's conduct."  *Gleason v. Garda CL W. Inc*., 2019 WL 8226385, at *2 (D. Ariz. Dec. 6, 2019).  Negligence is a question that ought to be reserved for the jury "when there is reasonable doubt as to the facts, or as to the inferences to be drawn from them."  *Id*.  "Furthermore, negligence is a mixed question of law and fact because breach and causation are 'factual issues usually decided by the jury.'"  *Id*. (citing *Gipson v. Kasey*, 150 P.3d 228, 230 (Ariz. 2007)).

The undisputed facts are that Ms. Gallagher hit Plaintiff head-on while driving on SR-64.  (Docs. 175 at 2; 1 at 7).  The parties dispute whether there was a third-party vehicle that prompted the accident, however.  (Doc. 186 at 2).  Ms. Gallagher states that another vehicle pulled out in front of her and caused her to swerve into the oncoming lane of traffic, hitting Plaintiff.  (Doc. 175 at 2).  Ms. Gallagher also notes that a witness, Mr. Mike O'Brien, "confirms" the existence of this third-party vehicle.  (*Id*. at 3).

On the other hand, Plaintiff testified at his deposition that he did not see any third-party vehicle that turned out in front of Ms. Gallagher and that Gallagher "never applied her brakes and she failed to drive her vehicle and was negligent when she let go of the steering wheel."  (Docs. 186 at 2; 171-1 at 31).  The VIR states that Plaintiff told law enforcement about the third-party vehicle, but Plaintiff disputed this admission in his deposition.  (Doc. 171-1 at 9, 33).  Plaintiff also stated in his deposition that any purported mention of the third-party vehicle in his statement to law enforcement is a "flat-out lie" because he told the officer that he never saw the other vehicle since he was so focused on Ms. Gallagher coming right at him.  (*Id*. at 33).

To find for Ms. Gallagher, the Court would necessarily have to make credibility determinations and weigh conflicting evidence—which the Court cannot do at the summary judgment stage.  *See T.W. Electric Service, Inc*., 809 F.2d at 630–31.  The reasonableness of Ms. Gallagher's care, and whether or not she experienced a sudden

emergency, are questions that should be left for the fact-finder to decide.  *See Celotex Corp.*, 477 U.S. at 322–23; *see also Body By Cook v. Ingersoll-Rand Co*., 39 F. Supp. 3d 827, 838 (E.D. La. 2014) ("Generally, questions of reasonableness are questions of fact for the jury.").

Having settled that summary judgment is not proper on Plaintiff's negligence claim against Ms. Gallagher due to disputes of fact, the Court will proceed to Ms. Gallagher's alternative arguments.

### 2. Ms. Gallagher's Alternative Arguments

#### a. Plaintiff's Cardiac Arrest and Lost Wages

Ms. Gallagher seeks partial summary judgment on Plaintiff's claim for lost future wages.  (Doc. 175 at 8).  She first asks the Court to find that Plaintiff's cardiac arrest is unrelated to the accident.  (*Id*. at 7).  She argues Plaintiff has failed to certify whether or not expert opinion testimony is necessary and failed to retain an expert as required by A.R.S. § 12-2603 and thus cannot establish the necessary causation to assert these damages. (Doc. 175 at 7).  As discussed *infra* Section III.D, Plaintiff's failure to retain an expert for his medical malpractice claim against NAHC warrants summary judgment in favor of NAHC on that claim.  Unable to advance this claim, the Court agrees that Plaintiff also cannot establish he is entitled to damages from Ms. Gallagher for loss of future earnings related to the cardiac arrest.  *See infra* Section III.D; *see also Gorney v. Meaney*, 150 P.3d 799, 804–05 (Ariz. Ct. App. 2007) (affirming the trial court's grant of summary judgment in favor of the defendant based on the plaintiff's failure to comply with A.R.S. § 12-2603(B)).

Ms. Gallagher further argues that Plaintiff should be precluded from asserting any damages for lost wages (whether related to his cardiac arrest or otherwise) because he has failed to produce any documents to support such a claim.  (Doc. 175 at 8).  The Court agrees that Plaintiff has not come forward with competent evidence that shows his loss of future earning capacity.  *Esparza v. Allstate Fire & Cas. Ins*. *Co*., 2021 WL 4893429, at \*4 (W.D. Wash. Oct. 19, 2021) ("To be competent, the evidence or proof of damages must

be established by a reasonable basis and it must not subject the trier of fact to mere speculation or conjecture.") (internal citations omitted).  From the record before the Court, it is unclear what Plaintiff did or currently does for a living, or how the accident has caused Plaintiff's inability to continue at his prior occupation—which is the bare minimum evidence that Plaintiff should have produced by now.  *See Nunsuch ex rel. Nunsuch v. United States*, 221 F. Supp. 2d 1027, 1035 (D. Ariz. 2001) ("Loss of earnings is an item of special damage and must be specially pleaded and proved.") (internal citations omitted); *see also Esparza*, 2021 WL 4893429, at *3 ("In order to put the question of lost earning capacity before a jury, the evidence must show with reasonable certainty that the injured party has suffered an impairment in his ability to make a living . . . [T]he showing that must be made is that the injury suffered by the plaintiff is an injury that, in fact, has diminished the ability of the plaintiff to earn money.") (internal citations omitted).  Plaintiff, having failed to produce any documentation or evidence supporting this claim, the Court finds Ms. Gallagher is entitled to summary judgment on Plaintiff's loss of future earnings claim.  *See Anderson*, 477 U.S. at 250; Fed. R. Civ. P. 56(e).

### b.    Property Damages

Ms. Gallagher next asks the Court to find that Plaintiff cannot recover property damages for the damage done to the rented VW Jetta he was driving.  (Doc. 175 at 8).  Ms. Gallagher argues that, under *Childress Buick Co. v. O'Connell*, Plaintiff cannot recover property damages for property he did not own.  11 P.3d 413, 418–19 (Ariz. Ct. App. 2000).  In *Childress*, the plaintiff, a Buick dealership, agreed to sell a used 1995 Buick Skylark to a prospective buyer, who took possession of the vehicle before his financing was approved.  11 P.3d at 414.  His financing was not approved and, while still in possession of the Buick, the prospective buyer was rear-ended by the defendant.  *Id*.  The defendant was insured by Nationwide Mutual Insurance Company, who paid the prospective buyer the amount necessary to repair the Buick.  *Id*.  The prospective buyer instead kept the money and returned the unrepaired Buick to the plaintiff dealership.  *Id.* The plaintiff then sued the defendant for reimbursement.  *Id*.  The trial court awarded plaintiff damages on summary

judgment. In doing so, it determined that ownership had not passed to the prospective buyer, and therefore, the defendant still owed the plaintiff for the vehicle damage. *Id.* The appellate court affirmed the trial court's ruling, holding that ownership had not passed from the plaintiff to the prospective buyer, therefore, the prospective buyer was not entitled to damages from the defendant. *Id.* at 418–19. The *Childress* court reasoned that while the prospective buyer was allowed to take possession of the Buick and drive it away from the lot, his right to possession had not yet vested as he was merely a permissive user. *Id.* at 417.

Here, Plaintiff seeks $11,282.39 in property damages for the damage done to the Jetta rented by his brother. (Doc. 1 at 7). Plaintiff substantiates his damages by including an invoice from Enterprise related to the damages to the rented Jetta; he does not include the original rental policy, however, which may or may not have helped ascertain whether Plaintiff could recover for damages to the car. (Doc. 1-1 at 10–11). The Enterprise invoice states that the responsibility for the damages falls on Plaintiff's brother: Mr. Joseph Roberts, as the renter. (*Id.*) Plaintiff is not mentioned on the Enterprise invoice. (*Id.*)

On these facts, it is unclear whether Plaintiff is legally entitled to recover property damages related to the Jetta—which he did not own or have a "right" to possess. *See Childress*, 11 P.3d at 459–60; *see also Kaufman v. Jesser*, 884 F. Supp. 2d 943, 959 (D. Ariz. 2012) ("In Arizona, [a]s a general rule, a plaintiff in a tort action is entitled to recover such sums as will reasonably compensate him for all damages ***sustained by him*** as the direct, natural and proximate result of [the defendant's] negligence, provided they are established with reasonable certainty.") (internal citations omitted) (emphasis added). Moreover, Plaintiff's claim for property damages is factually unsupported without the original rental agreement from Enterprise or any insurance policy documents. *See Celotex*, 477 U.S. at 323-24. Thus, the Court will grant summary judgment in favor of Ms. Gallagher on Plaintiff's property damage claim.

### c.    Punitive Damages

Finally, Ms. Gallagher asks the Court to find that punitive damages should be precluded here. (Doc. 175 at 8–9). Ms. Gallagher argues that Plaintiff has not shown that

1    her conduct was outrageous, oppressive or intolerable; or that it created a substantial risk
2    of tremendous harm, as Plaintiff is required to show.  (*Id.* (citing *Swift Transportation Co.*
3    *of Arizona L.L.C. v. Carman in & for Cnty. of Yavapai*, 515 P.3d 685, 692–93 (Ariz. 2022)).

4           Because Plaintiff's negligence claim is still outstanding, this issue is more
5    appropriately decided by the fact-finder since a claim for punitive damages necessarily
6    depends on the underlying tort claim.  *See Miller v. I-Flow Corp*., 2011 WL 13092973, at
7    *3 (D. Ariz. July 6, 2011) ("[T]he availability of punitive damages ultimately depends on
8    the viability of Plaintiff's underlying tort claims.") (internal citations omitted).  The Court
9    thus denies Ms. Gallagher's request for summary judgment on Plaintiff's claim for punitive
10   damages.  *See Celotex*, 477 U.S. at 322–23.

11          In sum, only Plaintiff's claims for negligence and punitive damages will remain
12   against Ms. Gallagher.

13   **C.     VW's Motion for Summary Judgment (Doc. 176)**

14          VW seeks summary judgment on Plaintiff's strict liability claim, arguing Plaintiff
15   has produced no direct or circumstantial evidence showing that it is more probable than
16   not that the Jetta's airbag was defective or that a causal link exists between the accident
17   and his cardiac arrest.  (Doc. 176 at 6).  VW also seeks summary judgment on Plaintiff's
18   negligence claim, arguing that Plaintiff has produced no evidence to show that it is more
19   probable than not that VW's airbag caused his cardiac arrest.  (*Id*. at 10).  Finally, VW
20   argues that Plaintiff's claim for punitive damages should be dismissed as there is no
21   evidence that it acted with egregious or malicious intent.  (*Id*. at 12).

22          Plaintiff argues that he can and has substantiated his claims.  He argues that "Mr.
23   Khouzam will be an expert cardiologist and damages caused to heart by airbags, ***still to be***
24   ***determine*** as to what his testimony will be, until after he peruses all the records."[4]
25   (Doc. 187 at 2).

26   **1.     The Products Liability Claim**

27

---

28   [4] Plaintiff never provided a "full and complete" expert disclosure as required by Federal
     Rule of Civil Procedure 26(a)(2) and the Court's Scheduling Order (Doc. 131 at 2).  The
     time to do so has passed.

"A manufacturer is strictly liable for injuries caused by use of any product that was in a 'defective condition unreasonably dangerous.'" *Golonka v. GM Corp.*, 65 P.3d 956, 962 (Ariz. Ct. App.2003) (quoting *Dart v. Wiebe Mfg., Inc.*, 709 P.2d 876, 878 (Ariz. 1985)).  In Arizona, to establish a *prima facie* case of strict products liability, the plaintiff must show that: (1) the product is defective and unreasonably dangerous; (2) the defective condition existed at the time it left defendant's control; and (3) the defective condition is the proximate cause of the plaintiff's injuries and property loss.  *Dietz v. Waller*, 685 P.2d 744, 747 (Ariz. 1984); *Bonar v. General Motors Corp.*, 2009 WL 44872, * 4 (Ariz. Ct. App. 2009).

Under the first element, three types of defects can result in an unreasonably dangerous product: (1) manufacturer's defects, (2) design defects, and (3) informational defects.  *Dillon v. Zeneca Corp.*, 42 P.3d 598, 603 (Ariz. Ct. App. 2002).  A manufacturer's defect is "flawed as a result of something that went wrong during the manufacturing process." *St. Clair v. Nellcor Puritan Bennett LLC*, 2011 WL 5331674, at *4 (D. Ariz. Nov. 7, 2011) (quoting *Gomulka v. Yavapai Mach. & Auto Parts, Inc*., 745 P.2d 986, 988– 89 (Ariz. Ct. App. 1987)).  A defectively designed product is "one that is made as the manufacturer intended it to be but that is unreasonably dangerous."  *Id*.  A defectively informed product is a product where a missing warning made the product defective and unreasonably dangerous.  *See Walsh v. LG Chem Am*., 2021 WL 5177864, at *5 (D. Ariz. Nov. 8, 2021) (quotation omitted).

Plaintiff's specific legal theory is not readily cognizable from the record before the Court.  Nonetheless, the Court construes Plaintiff's claim as a design defect claim based on his allegations that "the airbag deploy[ed] violently" and VW should have known there was a problem with their airbags.  (Doc. 1 at 6–7).

A design defect claim "begins with the assertion that a manufacturer produced a product that fails to meet the purpose for which it is designed." *Jones v. Medtronic Inc*., 411 F. Supp. 3d 521, 531 (D. Ariz. 2019) (citing *Stilwell v. Smith & Nephew, Inc*., 482 F.3d 1187, 1194 (9th Cir. 2007)).  A negligent design case focuses on "whether the defendant's

conduct was reasonable in view of a foreseeable risk at the time of design of the product." *Id.* (citing *St. Clair*, 2011 WL 5331674, at *5). "No expert testimony is necessary to establish a design defect [claim] because the test 'focuses on the safety expectations of an ordinary consumer rather than those of an expert.'" *Long v. TRW Vehicle Safety Systems, Inc.*, 796 F.Supp.2d 1005, 1010 (D. Ariz. June 20, 2011); *see also Martinez v. Terex Corp.*, 241 F.R.D. 631, 641 (D. Ariz. 2007) ("[T]here is no requirement under Arizona law that expert testimony be given in a products liability action.").

The issues before the Court are whether Plaintiff has offered sufficient evidence showing the airbag was defective and whether its deployment caused his injuries. He has not.

A non-moving party's burden on summary judgment is not onerous. However, the non-moving party must go beyond the pleadings and by its own evidence "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); *Anderson*, 477 U.S. at 250; *see also Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996) (noting that the non-moving party must "identify with reasonable particularity the evidence that precludes summary judgment"). If the non-moving party fails to make this showing, the moving party is entitled to judgment as a matter of law. *See Celotex*, 477 U.S. at 323.

Plaintiff has failed to meet his burden to produce or identify evidence that precludes summary judgment. First, Plaintiff has not responded to any of VW's written discovery, including its Requests for Admissions. (Doc. 176 at 9). As VW points out, the result of Plaintiff's failure to respond dictates that VW's First Set of Requests for Admissions are now deemed "admitted" under Federal Rule of Civil Procedure 36(a)(3). (*Id.*) These admissions include that Plaintiff has (1) "no evidence that a defect in the subject vehicle caused his injuries," (2) "no evidence that a defect of any kind existed in the subject vehicle at the time it left the possession, custody, and control of [VW]," and (3) no evidence that VW was negligent in the design or manufacture of the subject vehicle—among other admissions fatal to Plaintiff's case. (Doc. 176-1 at 82).

Moreover, the entirety of Plaintiff's disclosure appears to be the documents he

produced with his initial disclosure statement, which only included the Arizona Crash Report, four photographs of the crash scene and a repair estimate for the subject vehicle's damages. (Doc. 176-1 at 107). Importantly, Plaintiff has not produced any evidence thus far to substantiate his injuries—much less evidence showing there is a genuine issue for trial. *See Anderson*, 477 U.S. at 250. Without evidence to support his claims, and applying Rule 36(a)(3), Plaintiff cannot meet his burden of proving that an unreasonably dangerous defect existed in the VW as "[m]ere allegation and speculation are not sufficient to create a factual dispute for purposes of summary judgment." *Whitaker v. Pima County*, 640 F. Supp. 2d 1095, 1100 (D. Ariz. 2009).

Lastly, Plaintiff has not discussed this case with Dr. Khouzam, his purported expert, has not provided Dr. Khouzam with his medical records, nor has Plaintiff retained Dr. Khouzam as an expert. (Doc. 189 at 2; Doc. 176-1 at 109). Indeed, Plaintiff admitted in his deposition that he never talked to Dr. Khouzam—much less retained him as an expert. (Doc. 176-1 at 93). Plaintiff also admitted in his deposition that when he sought treatment at the VA hospital after returning to Wisconsin that he was told by his doctors that the airbag deployment did not cause his heart issues and that his injuries from the airbags were "superficial." (Doc. 176-1 at 91). Plaintiff does not dispute his concessions and does not produce any diagnosis, opinion, report, or other documentation—from Dr. Khouzam, or anyone else—to supports his allegations that the airbag was defective or in any other way caused his injuries. Importantly, the time to do so has passed. (Doc. 131 at 2–3). While expert testimony may not be necessary to establish a design defect, *see Long,* 796 F. Supp. 2d at 1010, Plaintiff has not set forth any evidence, by affidavit or otherwise, to show the airbag is defective or that there is a genuine issue for trial as to a causal link between the airbag deployment and his alleged injuries. *See Anderson*, 477 U.S. at 250; *see also* Fed. R. Civ. P. 56(e).

From the above, the Court finds VW has shown there is an absence of evidence to support Plaintiff's claim that a design defect in VW's airbag caused him injuries, and Plaintiff has failed to rebut this argument. Thus, the Court must grant summary judgment

in VWs favor on Plaintiff's products liability claim. *Soremekun*, 509 F.3d at 984 (citing *Celotex Corp.*, 477 U.S. at 323).

### 2. The Negligence Claim

VW also argues that Plaintiff's claim for negligence should be dismissed because he has not produced any evidence that VW breached a duty or caused Plaintiff's injuries. (Doc. 176 at 11). Again, as the movant, VW can prevail on summary judgment by arguing that there is "an absence of evidence to support the nonmoving party's case." *Soremekun*, 509 F.3d at 984 (citing *Celotex Corp.*, 477 U.S. at 323). To establish a *prima facie* claim of negligence, a plaintiff must prove (1) the existence of a duty of the defendant to the plaintiff, (2) a breach of that duty, and (3) an injury proximately caused by the breach. *See Brookover*, 156 P.3d at 1160. Summary judgment on a negligence claim is appropriate if the complaining party fails to establish one of the elements of negligence. *See Creel*, 524 F. Supp. 3d at 1094.

As with his products liability claim, Plaintiff has not set forth any evidence, by affidavit or otherwise as provided in Rule 56, to show there is a genuine issue for trial on his negligence claim—specifically, the issue of causation. *See Anderson*, 477 U.S. at 250; *see also* Fed. R. Civ. P. 56(e). Thus, the Court will also dismiss Plaintiff's negligence claim against VW due to his failure to provide any evidence to establish causation between VW's alleged negligence and Plaintiff's injuries. *See Creel*, 524 F. Supp. 3d at 1094 (stating that summary judgment on a negligence claim is appropriate if the plaintiff fails to establish one of the elements of negligence); *see also Keenan*, 91 F.3d at 1279 (stating that it is the nonmoving party's responsibility to "identify with reasonable particularity the evidence that precludes summary judgment.").

### 3. Claim for Punitive Damages

VW finally argues that Plaintiff's claim for punitive damages fails as well because Plaintiff has failed to set forth evidence that VW "acted with egregious and malicious intent to bring about [Plaintiff's] injuries" as required under Arizona law. (Doc. 176 at 12). The Court agrees. Moreover, the Court must dismiss Plaintiff's punitive damages claim against

VW as "the availability of punitive damages ultimately depends on the viability of Plaintiff's underlying tort claims" and Plaintiff's underlying claims have been dismissed. *Miller*, 2011 WL 13092973, at *3 (D. Ariz. July 6, 2011) (internal citations omitted).

### D. NAHC's Motion for Summary Judgment (Doc. 190)

NAHC argues it is entitled to summary judgment on Plaintiff's medical malpractice claim because Plaintiff has failed to comply with A.R.S. § 12-2603, which mandates that a plaintiff certify in a written statement that is filed and served with their claim "whether or not expert opinion testimony is necessary to prove the health care professional's standard of care or liability for the claim." *Id*. § 12-2603(A).  (Doc. 190 at 7).  NAHC also argues that Plaintiff has failed to set forth any evidence to establish a *prima facie* claim for medical malpractice.  (*Id*. at 9).  In response, Plaintiff argues that he has followed the requirements of A.R.S. § 12-2603 and has also set forth sufficient evidence to support his medical malpractice claim.  (Doc. 195 at 6, 9).   Apart from stating so, Plaintiff does not support these arguments with any evidence outside of his pleadings.  (*Id*. at 1–13).

To assert a medical malpractice action in Arizona, a plaintiff must establish that "[t]he health care provider failed to exercise that degree of care, skill and learning expected of a reasonable, prudent health care provider in the profession or class to which he belongs within the state acting in the same or similar circumstances" and that "[s]uch failure was a proximate cause of the [plaintiff's] injury."  A.R.S. § 12-563.  Demonstrating proximate cause generally requires expert testimony.  *Schirmer v. Avalon Health Care Inc*., 2017 WL 1927914, at *4 (D. Ariz. May 10, 2017).  As NAHC correctly points out, under Arizona law, a medical malpractice claimant must "certify in a written statement that is filed and served with the claim or the designation of nonparty at fault whether or not expert opinion testimony is necessary to prove the health care professional's standard of care or liability for the claim." A.R.S. § 12-2603(A).  If such a certification is necessary, then "the claimant shall serve a preliminary expert opinion affidavit with the initial disclosures that are required by rule 26.1, Arizona rules of civil procedure."  *Id*. § 12-2603(B).  The affidavit must contain:

1.   The expert's qualifications to express an opinion on the health care professional's standard of care or liability for the claim.

2.   The factual basis for each claim against a health care professional.

3.   The health care professional's acts, errors or omissions that the expert considers to be a violation of the applicable standard of care resulting in liability.

4.   The manner in which the health care professional's acts, errors or omissions caused or contributed to the damages or other relief sought by the claimant.

*Id.* However, if the claimant certifies that an expert opinion is not necessary, Section 12-2603(D) allows the defending health care professional an opportunity to dispute the certification. *Id.* § 12-2603(D). If the claimant fails to comply with the preliminary expert opinion certification requirement set out in Section 12-2603, their malpractice claim can be dismissed at the summary judgment phase. *See Schirmer*, 2017 WL 1927914 at *4; *see also Gorney*, 150 P.3d at 804–05 (affirming the trial court's grant of summary judgment in favor of the defendant based on the plaintiff's failure to comply with A.R.S. § 12-2603(B)).

Plaintiff has failed to comply with the preliminary expert opinion certification requirement in Section 12-2603. Plaintiff did not certify in a written statement whether or not expert opinion testimony is necessary, much less provide a preliminary expert opinion. *See* A.R.S. § 12-2603(A–B). Plaintiff's failure to comply with A.R.S. § 12-2603 warrants summary judgment in favor of NAHC on Plaintiff's sole claim for professional negligence. *See Schirmer*, 2017 WL 1927914 at *4; *Gorney*, 150 P.3d at 804–05.

**IV.    Conclusion**

For the reasons stated above, Plaintiff's claims against VW and NAHC are dismissed, but Plaintiff's negligence claim and claim for punitive damages against Ms. Gallagher remain. Partial summary judgment is granted in favor of Ms. Gallagher on Plaintiff's claims for lost wages and property damage.

Accordingly,

- 16 -

**IT IS ORDERED** that Volkswagen Group of America's Motion for Summary Judgment (Doc. 176) and Northern Arizona Healthcare's Motion for Summary Judgment (Doc. 190) are **GRANTED**.  Plaintiff's claims against Volkswagen Group of America Incorporated and Northern Arizona Healthcare Corporation are dismissed and the Clerk of Court is directed to terminate Volkswagen Group of America and Northern Arizona Healthcare as Defendants in this matter.

**IT IS FURTHER ORDERED** that Defendant Lee Anne Gallagher's Motion for Summary Judgment (Doc. 175) is **GRANTED** in part and **DENIED** in part.  The Motion is denied as to Plaintiff's negligence and punitive damages claims against Defendant Gallagher but granted as to Plaintiff's claims for lost wages and property damages to the VW Jetta.

**IT IS FINALLY ORDERED** that in light of Plaintiff's remaining claims, the remaining parties are directed to comply with Paragraph 10 of the Rule 16 Scheduling Order (Doc. 131 at 6–7) regarding notice of readiness for pretrial conference.  Upon a joint request, the parties may also seek a referral from the Court for a settlement conference before a Magistrate Judge.

Dated this 26th day of March, 2024.

Honorable Diane J. Humetewa
United States District Judge